May it please the court. Neither BIA decision can be affirmed because both are infected with legal error. The legal error that gives this court jurisdiction under 8 U.S.C. 1252 A.2.D. and the legal error that requires remand to cure. The BIA's first decision violated its own review regulation at pages 60 to 61 of the record by supporting its statement that Mr. Urrutia had not been rehabilitated with impermissibly found facts and two by failing to review for clear error the IJ's factual findings that Mr. Urrutia was committed to resolving his problems with alcohol and had the community support to do so. Did you participate in the brief? I assume you're familiar with it. I am your honor. I did not participate in it. The brief on page 19 said the immigration judge made, quote, a larger predictive finding that Mr. Urrutia was unlikely to re-offend. Yes, sir. And it cites to pages in the record that do not support the assertion. Indeed, I cannot find the word re-offend anywhere in the IJ or the BIA opinions. And I think that's crucial to your predictive finding argument. Although neither the IJ nor the BIA used the term re-offend, this predictive finding is inherent in the IJ's decision. Well, it's not. In fact, and my main problem with your analysis of the opinion is that the IJ specifically said, took the analysis that you're calling the predictive finding, was it appears in the IJ's discretion analysis. The IJ labeled the analysis as part of, he or she made a reference early on to the alcohol and criminal history issue and said, you know, I'm coming back to that later. And the later was an explicit analysis of the discretion issue, which the BIA is clearly entitled to review de novo. So where is the obvious breach of the appropriate standard of review, which the BIA, of course, recited correctly at the start? Well, this court looks not what the BIA says it does, but what the BIA in fact does. Yes, but it's what the IJ said. The IJ said, here's my discretion analysis. And the discretion analysis did not make a predictive finding as to re-offend. It made some findings with respect to a testimony that he was committed to address his alcohol problem that he'd refused to address for so long until he finally got in a very serious accident. That factual recitation of the record by the IJ was not rejected by the BIA. It was the IJ's, this is the way I'm reading it, and you tell me why I'm wrong. This was the IJ's factual backdrop for the IJ's analysis of the discretionary balancing question. So we have no, I see no standard of review problem. Yes, Your Honor. I will point to the IJ's decision, specifically in the findings of fact. On page 127 of the administrative record, the IJ makes two core factual findings. And the first one appears here at 127. The IJ there found that Mr. Urrutia had sought enrollment in a treatment program and was committed to resolving his problems with alcohol, that he has expressed genuine remorse for his actions, and he understands the gravity of what he has done. It then goes on on page 131 to discuss how that commitment to resolving his problems with alcohol was bolstered by the support of his community. And at 130, the preamble to what you're now referring to, the very first line on 130, that brings us to the last remaining issue in this case as to discretion. The court must weigh positive factors and negative factors, et cetera. And then the analysis goes on over on page 131 to what you're referring to. That is explicitly a weighing by the IJ that the BIA was entitled to review De Novo. I don't understand the argument here. The IJ at this part is restating his factual findings. These are the core factual findings that this community support would have finally given him this resolve to quit drinking. And so while this portion is in the discretionary portion, there are still findings of fact that the IJ is using when weighing those discretionary. Where does the BIA reject what you're talking about? The BIA rejects these findings on page 60 and 61 of its decision. So the last paragraph, excuse me, on page 60. Well, the addendum is poorly structured. I apologize, Your Honor. The addendum, Your Honor, we ought to have addendum numbers. You do not have addendum numbers? No. They may have. Well, yeah, I have 042 and 43, June 2018. Okay. The BIA decision does appear in several places in the record. So I can also refer to pages 43, 44, and 45 if that is more convenient. So the final paragraph, then, on page 44 of the record, and the last paragraph on the only paragraph on page 45 of the record, then, is where the BIA is supplanting these IJ's findings. Further, the respondent has not shown that he has been rehabilitated. The IJ did not find that he had been rehabilitated. The IJ made no explicit, did not use the word rehabilitation, no. But in this particular case, rehabilitation really boils down to a binary question of whether or not Mr. Urrutia was committed to resolving his problems with alcohol and whether or not he would, in fact, drink and drive again. But to say that that is countered with the BIA statement, the respondent has not shown that he has been rehabilitated, to say that's finding a fact that counters the IJ is to say it is a fact. And I think that's also a problem in your argument as to whether or not that is a factual determination or if that's a discretionary conclusion based on all of the facts that the IJ found. Well, Your Honor, we have been unable to find any controlling BIA or judicial authority on the specific line drawing between fact-finding and non-factual determinations. Now that's not really a surprise now, is it? Because it gets kind of cloudy on the edges for everybody. Let me ask this, because I might clarify, I might not, I might confuse instead, because that's what I'm good at. But if you think about a finding of fact, I get where you say the finding of fact is he is committed to maintaining sobriety, right? That sounds like a fact-finding. I've listened to all the evidence, and he's, I think, committed. But the second piece of that, that he's not going to drink and drive again, that seems like a discretionary application of the previous finding to just the worldview, because it's sort of predictive of what the world's going to be in the future, and it's not like a predictive fact, right? Because if you think about predictive facts, you're usually thinking about things like, because A is true, he is going to decompensate, so he's got, suffers from bipolar syndrome. He doesn't take his medications. The predictive finding of fact would be he's likely to decompensate, and in a decompensated state, he is a risk to the community, right? Those are kind of predictive facts, and you can think of something that's more helpful to the claimant than that. But this doesn't really sound like a predictive fact. It's just like we're hopeful that he's not going to drink and drive. Why am I wrong? Well, I'd point, Your Honor, to Waldron, in which the IJ found that there was a, or the IJ's findings of fact implied a likelihood of separation, or many of them, in the future, the family would be separated if Mr. Waldron was removed. And the BIA rejected that finding by saying, I see no evidence that there would be likelihood of separation. So here, when we're talking about the likelihood of Mr. Urrutia drinking and driving again, it's that same predictive finding as in Waldron. So anything that predicts a likelihood of any fact becoming true is a predictive fact always? That is, again, in the nature of prediction, is whether or not something is likely or not to occur. And yet rehabilitation seems like a moment in time. I feel that based on the facts that have been found and his experiences at this moment, he appears to be rehabilitated. Well, rehabilitation, the BIA is certainly viewing it as a point in time, but the IJ instead is looking towards the future. And as part of this, as a process of Mr. Urrutia's rehabilitation and his ability to, the community support that's going to keep him to his commitment not to drink again. There's a reference in the brief, or the reply brief, that six circuits forced the BIA to stop reviewing predictive findings de novo, with no citation to an A circuit case. Have we ever addressed this distinction between fact facts and predictive facts? To my knowledge, Your Honor, no. Not specifically. So you're not relying on A circuit law? Not on the A circuit law, no. You're relying on the BIA reacting to other circuits' criticism, which is not unusual, but they also didn't have to react to that in the A circuit. The BIA did not have to necessarily react to that in the A circuit. So what's the authority that it is the standard of law they had to obey in the A circuit? Well, it's the BIA's own precedent. The agency must follow its own precedent. When did they follow this rule in an A circuit case? They deal with greater and lesser circuit court hostility all over the country all the time, and they don't have to accept one circuit's criticism or six circuits' criticism in a case that arises in a circuit that hasn't adopted the criticism. So I question whether you're talking about a clear error of law that is applicable in an A circuit review situation. Well, again, matter of ZZO, it's the BIA's own precedent, so it must follow that precedent if it sets forth. It was a precedential decision? Yes. Labeled as such? Do you know that distinction? Yes, Your Honor. It's tricky. I'm not sure I understand it. Yes, I mean, it's not an unpublished case, and I would have to verify just to make sure that it says precedential on the top. I don't want to say that. I don't have it right here in front of me. If Your Honors don't have any further questions for me, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you very much. Mr. Rabin? Good morning, Your Honors. Arthur Rabin on behalf of the Respondent, Attorney General. May it please the Court. In this case, we have two petitions for review. Basically, they were consolidated because the initial petition challenged the Board's main decision in this case. That is, the Board reversed an immigration judge's grant of relief. It didn't do so based on any legal factor. That is, it didn't say, well, you failed to meet a statutory element. No. They said, based on our ultimate exercise of agency discretion, we reversed. And that was the sole issue in the immigration appeal before the BIA. What about the BIA's reference to a couple of statements from 2016 that I don't think the IJ referenced? This idea of whether or not he went to treatment voluntarily and whether it's voluntary if your doctor refers you to the treatment, or whether that makes it involuntary, I assume is the inference. And also, they made a conclusion that he had, in 2006, not made a decision to stop drinking. Are those facts that the BIA was permitted to make or conclude were accurate? I would point to the Second Circuit's case in Wallace for that. In there, it was exactly the same scenario. The Court was faced with the Board pointing out evidence that the immigration judge didn't. And what the Court said, well, if it was being done as part and parcel of its discretionary decision, then the Board is entitled to review the record. Is that still not fact-finding? Even those two, I think you could. It's not sort of a, maybe it's a fact that these happened in 2016 that's sort of uncontrovertible. But it seems to me both of those statements, any good advocate could describe the situation differently, right? Either that could have been a truly voluntary submission to treatment or you could argue the opposite. No, it was pretty involuntary because his doctor was telling him he had to do it. So there's an argument on both sides. Is that the kind of fact-finding that this case was talking about or that is really permissible in this kind of situation? Well, I think what that case was talking about, Wallace, is that the agency, the Board, should be entitled to look at the whole record. Should be able to examine the entire record. Because otherwise, it's stuck in the position where if the IJ doesn't mention, say, a number of convictions or things like that, then that, you know, would the Court then say, well, then the Board is not entitled to look at those things because the IJ didn't mention them in his decision. Are we talking about the standard review in Wallace? Obviously, the Board can look at a full record to determine that the IJ's finding based on an inadequate coverage of the record was clearly erroneous. Yes, Your Honor. What was the standard review applied in Wallace? Well, in Wallace, what they said is, and I'm quoting here on page 141. That's the only issue we're talking about. Otherwise, I agree with you. We have no jurisdiction over the discretionary aspect of this appeal if we get to that. So all we're talking about is whether the BIA applied an erroneous standard of review. Right, Your Honor. We're talking about Wallace. Well, they looked at facts that the IJ didn't focus on. But that was the whole issue, whether or not there was impermissible fact-finding in Wallace. The standard review is obviously de novo on a discretionary claim. So what the Wallace Court said is, well, when they do a de novo review, when an agency does a de novo review, what does that entail? And what they specifically found was that that also entails for them to allow them to look at the underlying facts, consider the underlying facts, and review the factual record. And that such review does not convert its discretionary determination to whether a petitioner warrants an ineptitude against adjustment and become improper fact-finding. So the position that we have taken is that when the board is in the arena of the ultimate discretionary review, not whether or not it's meeting statutory elements, but now the agency is just saying, as our discretion now, when we look at the entire record, when we weigh the evidence of equities versus the negative factors in the case, what do we see? Well, the IJ obviously considered those factors and found them that they leaned one way. The board looked at them and said, no, they leaned the other way. That is exactly the kind of things that the statute doesn't want the court to review because it's a discretionary evaluation. You're getting into the facts of the record that the agency may be conflicted over, but those are not necessarily finding of facts. Because remember, the board never rejected any of the findings of fact. What's your view on whether the IJ made any conclusion about rehabilitation? We don't think he did. What the IJ did was that he made in his discretion determination a simple statement. That is, he at that point, as a snapshot in time, as he's looking at the evidence, the IJ was looking at it, said he appears committed to resolving his issues with alcohol at that time. So does that mean that the BIA made its own factual finding about rehabilitation independent of anything that the IJ said? I mean, is that a fact finding? How do we review that term? It seems like rehabilitation has sort of taken on this bigger life than the number of letters in the word, right? It's almost a factual conclusion based on a bunch of facts. How do we look at that? Well, I think the court should look at it in the sense that the way the board did. This was an appeal by the DHS of a grant of relief. DHS appealed based on two grants, and they said, we believe the immigration judge erred in the way he weighed the criminal background and the rehabilitation evidence. So because there were a bunch of statements as well as summaries, medical summaries, about whether or not when he went through alcohol rehabilitation, how successful he was. How do we know what's included in that? And I may be asking questions we don't know the answer to, but if you could talk about rehabilitation, you could say it's limited to the sort of things you're talking about, which is his commitment to sobriety, his entrance into treatment, and the specific support particular people have of him in that endeavor. But does it also include all of the other positive characteristics or features of his life that the IJ found? How big is rehabilitation? Do you include the fact that he's got a family, supportive or not, but he's got a good family that he's close to, the church, the job? How far do we go with this idea of rehabilitation? Well, you don't, because that's part of the agency's discretion, and that's why the court should not involve itself, and that's why the statute shields this particular determination from the court. What I'm talking about is that when you have a criminal background, and that criminal background is based on drinking and driving and committing driving offenses, there's going to necessarily be some evidence put forward of rehabilitation. That is, that this particular petitioner has overcome that criminal background. Most of these cases, that's what they revolve around, and when the courts talk about, well, is this factor of rehabilitation, is that a discretionary factor? Yeah, that's what they're talking about. When somebody is trying to overcome their issues, the broader theme there is rehabilitation, and so when the board is looking at it, and the Seventh Circuit did also in Guevara, the other rehabilitation case that we cited in our brief, what they found is that they may make statements and label things differently, whether it's a negative factor, whether it's a positive or maybe even a neutral factor, but that's not fact-finding. That's just looking at this broader theme of rehabilitation, and the agency should be permitted to look at the entire record to determine that. And remember, all these... Isn't part of the issue here whether rehabilitation is a predictive finding that has to be made? Well, in other words, take a typical convention against torture claim, where the question is, if this person is removed to the country and issued, will the government be able to protect him or her from torture? Well, that's a predictive finding that is essential to applying the convention of torture in a particular case. It doesn't seem to me that's true here. Rehabilitation is not an up-or-down issue with respect to this discretionary decision. So it doesn't have to be. There doesn't have to be a rehabilitation finding. There has to be a weighing of facts that might be relevant to a rehabilitation finding against negative facts. Am I missing something there? No, you are, because most of the cases that talk about predictive findings are exactly those kind of cases. When they talk about future persecution, what is the risk of future persecution? What is the risk of an withholding case? Is there a reason to believe in a cat protection case, torture protection? Is there a clear probability of torture in the future? Not this. Here what the IJA was looking at is, based on the evidence, this was not a predictive finding, but a historical record in front of the judge, does it show efforts of rehabilitation? Not that the judge was saying, I believe that in the future he will never drink and drive. I believe he will stop drinking. Well, that's not what the judge was doing. The judge was just saying, well, we have all these DUI offenses. And then the record also contained all these summaries, which are exhibits in the IJA's decision. The IJA did consider them. He explicitly said, I will consider all those summaries. But the board then said, well, we will consider them also, and we don't find support for rehabilitation in those summaries. What the judge looked at was whether or not the rehabilitation actually occurred at that specific time, because he's making a discretionary finding at that specific time. And so when the board said, well, let's review that finding, and whether or not at that specific time this petitioner showed rehabilitation. And they said, no, the record shows that he doesn't because he, based on the summaries, did not make a commitment to stop drinking, and then nine months later. But the rehabilitation finding was with respect to the sincerity of a commitment to do better in the future, which I suspect 98% of the DUI offenders around the country would make a similar commitment, and more than half of them would not live up to it. Yeah, sure. I mean, but that standard is, like I said, part and parcel in these kinds of cases. It's not a completed rehabilitation, like he completed a drug offender, a drug abuse treatment program. Yeah. And, you know, the other case, Noble, where the Second Circuit said there may be cases out there, based on those particular facts in those cases, where there may be a factual finding about rehabilitation. But this is not one of those cases. There was no expert here that said this particular petitioner, based on whatever I opine, that this particular petitioner is rehabilitated for the future. A factual finding on rehabilitation versus the discretionary use of rehabilitation. How are the courts supposed to figure out which one the immigration courts are using? It seems like that should be a different word. Maybe you are. I mean, the way the agency uses it is as a factor in their calculus, in how they weigh the evidence. You know, based on aggravating evidence, mitigating evidence. Well, one of those factors in a DUI case is going to be rehabilitation. So give me an example of a situation where it would be fact-finding rehabilitation that then, I'm assuming you're saying, would then be subject to the clearly erroneous standard by the BIA. What's an example of that? Well, like I said, what if they had produced an expert to say, I have treated, I'm a psychiatrist, psychotherapist, or psychologist, clinical psychologist, and I have treated this particular petitioner over a number of months or whatever. And based on his attendance or rehabilitation programs, outpatient, inpatient, based on this petitioner's therapy, medication, whatever it is, I believe that this petitioner is rehabilitated. And then the immigration judge then adopts that as a finding and says, I think the evidence supports that this particular petitioner will not re-offend and is not going to, there's no recidivism. And the BIA, so long, in your scenario, the BIA, so long as it either accepted those facts or found them clearly erroneous, could then say, all right, take all the IJ's findings. There was a finding from this expert that it was, that he's rehabilitated. But we think based, in the exercise of our discretion, we think that IJ made a decision that some big R rehabilitation has not happened and therefore would deny relief. Is that what you're saying? Yeah, as long as they adopt that fact. Weighed the factor too heavily. Right. They just say the judge gave too much weight to that finding. So basically what you're saying is if there's a hearing and at the end of the hearing the IJ says, I find that the petitioner has been clean, sober, employed, law abiding for the last seven years. He is rehabilitated. That that's a fact. That then is a pure finding of fact. As opposed to, I think he's got good intentions. I think he's doing the right things right now. He's got support in the community, his church. I think he's rehabilitated. And somehow there's a qualitative difference between those two in making one a finding of predictive fact and one being just discretionary weighing. I think, like the Second Circuit said, there may be cases out there that this evidence of rehabilitation is so strong that it may support a finding of future rehabilitation. But that is not this case. There was no IJ finding to that. Right. The IJ said he's made a credible, his commitment to do better in the future is credible and worthy of when the IJ did the discretionary balancing and gave it significant weight. That's correct, Your Honor. The DIA did not. Yes, Your Honor. And Congress says we can't review that. Yes, Your Honor. And I see I'm out of time, but I just want to throw a quick blurb out for the second issue. That is, the motion to reopen was correctly denied because Petitioner brought nothing but more cumulative evidence of rehabilitation. And this Court has already said that when you have a jurisdictional bar, you cannot circumvent the jurisdictional bar by just filing a motion to reopen with more discretionary evidence, subject to the Court's questions. Thank you, Your Honor. All those for rebuttal? Thank you, Your Honor. May it please the Court. Judge Loken, quickly to your question regarding matter of ZZO. I just wanted to confirm that that was a national presidential decision and it was labeled. A few points on rebuttal. First, I'd like to hammer home the error that was made here. Regardless of this Court's view of rehabilitation, the Board engaged in impermissible fact-finding to support its determination that Mr. Urrutia had not shown that he was rehabilitated, specifically at page 44 of the administrative record. Page what? 44, Your Honor, of the administrative record. This is the last page of the Board's decision. The top of the last paragraph, the Board states, although the respondent testified that he voluntarily sought enrollment in a 13-week alcohol treatment program in 2016, this appears to be contradicted by the discharge summary from the program, which indicates that the program was recommended to the respondent by his doctor, who was concerned about the impact of the respondent's alcohol use on his health. End quote. Your Honors, the Court, excuse me, the Board, is cherry-picking a line from a discharge summary to discredit Mr. Urrutia's express credible testimony that he sought that treatment voluntarily. It's also worth noting that at the critical point IJ's opinion, was that specific testimony credited? The Mr. Urrutia's testimony, the immigration judge did not make an explicit determination one way or another, but the statute presumes that this testimony is credible unless there's an adverse credibility determination, Your Honor. And so if I may just point out that the Board, throughout its decision, cites... You see, you're conflating two distinct questions, it seems to me. One is whether the BIA overruled a finding of the IJ without de novo rather than clearly erroneous. The other is, did the BIA roam through the administrative record as a whole as it's obligated to do and make factual findings in its exercise of the discretion that we cannot review? It seems to me you're arguing the second, which is not an error of law. The BIA picking through the record, as counsel explained in the Second Circuit case, the BIA can do that. Respectfully, Your Honor, in the cases cited by the government, Wallace, Noble, Guevara from the Seventh Circuit, in all of those cases, the Board was wrestling with the factual findings, the actual findings of fact made by the immigration judge in making its alternative discretionary determination. I suspect that's right. I haven't studied the cases like you have, but now give me a case that says the BIA commits an error of law when it makes factual determinations based on the administrative record as a whole on questions the IJ did not address. Your Honor, I point the court to, and I want to be careful, I want to say I'm about 85% certain that this would be one of those cases, but I do want to just caveat it with that. I would direct the court's attention to Garcia Mata, Flores, Waldron, Nabuola, and Ramirez-Pero. Garcia Mata doesn't do it for you. It doesn't. But Garcia Mata was the lone exception where it wasn't clear whether the court applied the correct standard of review and the court remanded for clear application. However, I believe it was Ramirez-Pero where the board was crediting a document, finding facts based on a document, which the immigration judge did not make those findings a fact. But, Your Honor, I think the important point is that the regulation, HCFR 103.1 D3, the regulation says that the board cannot make findings of fact in the course of deciding its appeal. It cannot act as the trier of fact. And when it went into the factual foray, which it's allowed to review, but it is not allowed to discredit Mr. Urutia's testimony based on a cherry-picked line in a discharge summary of a 500-page record. And so, Your Honor, that is the impermissible fact-finding here. Turning to a second point, the government's argument about jurisdiction, I trust this court sees that this court has jurisdiction for the same reason that the BI decision should be remanded because there is an error of law here at which this court unquestionably has jurisdiction to review under 1252 A2D. Your Honor, as I just saw, my time is up. We ask the court to reverse and remand to the board for proper application of the standard of review. Thank you. Very good. The appeal has been well-briefed and argued. Ms. Granzi and Mr. Hofeld, you did a nice job. The Immigration and Nationality Act never serves up easy cases. You've done a fine job.